```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-24-16
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TELECOM ASSET MANAGEMENT, LLC,

                      Plaintiff,

- against -

CELLCO PARTNERSHIP, et al.,

                      Defendants.

MEMORANDUM
OPINION AND ORDER

15-CV-2786 (SHS) (RLE)

**RONALD L. ELLIS, U.S.M.J.:**

## I.  BACKGROUND

Plaintiff Telecom Asset Management, LLC ("TAM") commenced this action against Defendant Cellco Partnership d/b/a Verizon Wireless ("VZW") on or about October 24, 2014, in the Superior Court of California for the County of San Francisco. (Doc. No. 1 at 2.) The case was removed to the Northern District of California on November 13, 2014 (Doc. No. 1), and later transferred to the Southern District of New York upon stipulation of the Parties on April 10, 2015. (Doc. No. 76.) The Honorable Sidney H. Stein referred the case to the undersigned for general pretrial on June 30, 2015. (Doc. No. 105.)

The Parties appeared before the Court on December 21, 2015, to resolve discovery disputes. At that conference, the Court ordered the Parties to meet and confer on any outstanding issues, and submit a joint letter motion for the Court's ruling on matters that the Parties could not resolve. The Parties submitted the letter on January 5, 2016. (Doc. No. 148.)

On January 11, 2016, the Court ordered the Parties to submit affidavits from persons with knowledge of factual differences for certain discovery production disputes. (Doc. No. 149.) TAM submitted the affidavit of Michelle Carter ("Carter"), TAM's general business attorney, and co-counsel of record. (Doc. No. 150.) As TAM's business counsel, Carter conducted legal

review of all "non-IP contracts or proposed contracts" that TAM considered, including non-disclosure agreements, broker/agent agreements, and consulting agreements. (*Id.* at 1.) VZW submitted an affidavit from Laura E. Miller ("Miller"), admitted *pro hac vice* as attorney for VZW. (Doc. No. 151.)

TAM advises telecommunications companies and manages transactions for wholesale telecommunications assets and services. (Doc. No. 98 at 5.) It alleges that in 2012, it entered into an agreement with VZW to provide services in exchange for fees or commissions from one of the parties to a transaction. (*Id.* at 5-18.) In 2011, TAM performed its services for VZW pursuant to a written agreement, and brought VZW "several large deals as a broker for other carriers." (Doc. No. 153 at 1.) TAM asserts that, based on its success, it reached a second agreement with VZW that was negotiated from January 2012 through mid-May 2012. (*Id.*) TAM was to "assist VZW with all aspects of its telecom procurement in the South Area, and was to be compensated via success fees based on that procurement." (Doc. No. 148 at 5.) VZW, however, purportedly repudiated the contract and performed the contract work itself. (*Id.* at 4.) TAM contends that its damages should be equal to what it would have earned for soliciting bids under the Parties' alleged agreement. (*Id.* at 5.) VZW disputes that the Parties entered into a second agreement, that TAM performed work under it, or that TAM would have received proposals to assist with all telecommunications services for VZW. (Doc. No. 141 at 1-3.)

Before the Court are the Parties' requests that the other side produce certain documents, and TAM's request that VZW conduct additional searches pursuant to modified search terms and additional custodians. For the reasons that follow, the TAM's requests to compel production

and to conduct additional searches are **DENIED.** VZW's requests to compel production are **GRANTED IN PART.**

## II. DISCUSSION

Unless otherwise ordered by the Court, Parties may obtain discovery regarding non-privileged matter that is relevant to any Party's claim or defense, and proportional to the needs of the case. FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* The Court has broad discretion in managing discovery. *Willis v. Amerada Hess Corp.,* 379 F.3d 32, 41 (2d Cir. 2004). "Generally, discovery is only limited 'when sought in bad faith, to harass or oppress the party subject to it, when it is irrelevant' or privileged." *Chembio Diagnostic Systems, Inc. v. Saliva Diagnostics Systems, Inc.,* 236 F.R.D. 129 (E.D.N.Y. July 14, 2006) (quoting *Melendez v. Greineri,* No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003) (quoting *In re Six Grand Jury Witnesses,* 979 F.2d 939, 943 (2d Cir. 1992))). In making a determination on the scope of the requested discovery, a court may consider the importance of the issues at stake in the action, the amount in controversy, the Parties' access to relevant information, the Parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits. FED. R. CIV. P. 26(b)(1).

### A. TAM's Requests for Production

TAM seeks production of: (1) awards related to "dark fiber"; (2) invoice and payment demands related to the six formal requests for proposal ("Additional RFPs") issued to solicit bids for particular assets or services (*see* Doc. No. 98 at 3-5); and (3) contracts and agreements as of 2012 that include "gain-share" or "success" fees. (Doc. No. 148 at 4-6.) TAM also seeks to

3

modify the Parties' discovery agreement to add additional search terms and custodians. (*Id.* at 6-9.)

The Court finds that Tam's requests for production are overbroad. TAM has not shown that the documents sought are relevant. TAM's requests appear to be based on speculation surrounding the negotiations for, and the nature of, an alleged agreement between the Parties. TAM asserts that the Parties entered into a second agreement, under which TAM began performance, but that VZW later breached the agreement. VZW maintains that the Parties did not enter into a second agreement, and that TAM never had a guarantee to perform work for VZW. The information TAM has requested seems to relate most closely to its breach of contract and implied contract causes of action because TAM seeks to show that VZW has engaged in a pattern or practice of having vendors perform work without a written agreement. (Doc. No. 148 at 4.) TAM is also attempting to prove lost business opportunity as a measure of its damages. (*Id.* at 4-5.) The burden VZW will incur, however, in producing information which may or may not reveal whether the Parties entered into an agreement, outweighs the benefits that TAM alleges it will obtain if the documents are turned over.

TAM claims to need all awards related to dark fiber that were issued from December 1, 2011, to the present. VZW points out, and TAM concedes, that such production may consist of thousands of emails. (*Id.* at 4.) VZW also argues that it would have to gather the documents from "dozens of employees across several regions in Verizon's South Area." (*Id.*) TAM has not made a showing that a search for *all* awards relating to dark fiber is proportional to the needs of the case, especially given that the Parties' negotiated the alleged agreement from January 2012 through mid-May 2012, and it is not clear that TAM would have received dark fiber

4

procurement. (Doc. No. 153 at 1.) VZW argues that it has already provided information to TAM regarding dark fiber procurement projects for which an RFP was issued. (Doc. No. 141 at 2.) TAM's request for all dark fiber awards is **DENIED.** VZW has agreed to produce the form emails it began using in early 2013, and is **ORDERED** to do so. (*See id.* at 4.)

TAM's requests for all invoices and payment demands related to the Additional RFPs, and for all contracts as of 2012 that include success fees are **DENIED.** TAM has not shown that it would have received the Additional RFPs, even if there had been an agreement in place between the Parties. TAM has also not established that the alleged agreement would have resulted in the same, or similar, compensation for TAM as for the third-party contracts. In her deposition, Carter stated that only if a transaction was in progress, would TAM receive success fees. (Miller Affidavit, Ex. A at 215: 4-10.) Furthermore, VZW argues that it does not keep a central database of all contracts, and has stated that it has no agreements relating to the type of services for which TAM alleges the Parties contracted. (Doc. No. 141 at 2.) Therefore, the relevance of these documents is not proportional to the needs of this case, and does not outweigh the burden placed on VZW in having to produce them.

TAM states that the Parties "have been unable to agree to a modified list of additional search terms," pursuant to a 2015 discovery agreement that provided for additional discovery and custodians. (Doc. No. 148 at 6.) VZW asserts that it has met its discovery obligations, and will not conduct another search. (Doc. No. 148 at 7.) According to VZW, the Parties began exchanging documents in March 2015, and "tens of thousands of documents" have been produced. (*Id.*) It argues that at the Parties' meet and confer, TAM agreed to provide VZW with an explanation of how VZW did not meet its discovery obligations, but that TAM did not explain

5

the perceived deficiencies. (*Id.*) The Court is not aware of any agreements between the Parties from early 2015 to engage in additional discovery. The Court finds that TAM has not provided a sufficient basis to compel VZW to conduct searches pursuant to new search terms, especially since discovery was set to close February 16, 2016. (Doc. No. 132.) To the extent that VZW has not produced relevant and responsive documents for individuals identified in their initial disclosures, it is **ORDERED** to do so by **February 29, 2016.**

### B.  VZW's Requests for Production

VZW seeks production of: (1) all contracts related to TAM's provision of services from December 2011 to the present (Defendants' ("Defs.") RFP No. 21); (2) TAM's general ledgers from 2009 to the present (Defs. RFP No. 22); and (3) all documents related to TAM's efforts to mitigate damages (Defs. RFP No. 23). (Doc. No. 148 at 1-4.) The Court ruled on the requests for contracts and the general ledgers in the conference held on February 10, 2016. TAM was ordered to produce the fifteen to twenty identified contracts, and the general ledgers **no later than February 16, 2016.**

VZW's request for all documents relating to TAM's efforts to mitigate Defendants' alleged harm is **DENIED.** VZW argues that TAM refuses to confirm whether it has produced all documents related to its efforts to mitigate. (Doc. No. 142 at 2.) TAM argues that it is "impossible for TAM to mitigate its damages in the traditional sense," because TAM's loss is a loss of business opportunity. (Doc. No. 145 at 3.) TAM's agreement with VZW was a "unique opportunity" to administer RFPs for VZW, and it could not simply look for new RFPs to administer for another company. (*Id.*) Lastly, TAM confirmed that it has already produced responsive documents regarding its efforts to mitigate. (Doc. No. 148 at 3.)

6

### III. CONCLUSION

For the foregoing reasons, Plaintiff's requests to compel discovery are **DENIED.** Defendants' requests to compel discovery are **GRANTED IN PART**, as ordered by the Court at the February 10 conference. Having resolved Doc Nos. 139, 142, 152 and 156, the clerk of court is directed to terminate those motions.

SO ORDERED this 24th day of February 2016.
New York, New York

The Honorable Ronald L. Ellis
United States Magistrate Judge